1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUISA J. HERNANDEZ,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Operations of Social Security,<br><br>Defendant. | Case No.  ED CV 17-00876-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.     INTRODUCTION

Plaintiff Luisa J. Hernandez ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability and disability insurance benefits ("DIB").   For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.     PROCEEDINGS BELOW

On January 29, 2013, Plaintiff applied for DIB alleging disability beginning July 10, 2011.  (Administrative Record ("AR") 63, 71.)  Her application was denied initially on June 18, 2013, and upon reconsideration on January 13, 2014.  (AR 86, 93.)   On January 23, 2014, Plaintiff filed a written request for hearing, and a

hearing was held on September 16, 2016.  (AR 35, 98.)  Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert ("VE") and an impartial medical expert.  (AR 37-62.)  On October 6, 2015, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[1] since July 10, 2011.  (AR 29-30.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  (AR 1.)  Plaintiff filed this action on May 4, 2017.  (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.  *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 10, 2013, the alleged onset date ("AOD"). (AR 18.)  At **step two**, the ALJ found that Plaintiff has the following severe impairments: depressive disorder secondary to a general medical condition; somatoform disorder; degenerative disc disease; status-post left lateral epicondylectomy; and bilateral carpal tunnel syndrome.  (*Id.*)  At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (AR 19.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform a range of light work . . . specifically as follows: the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk for six hours out of an eight-hour workday with regular breaks; she can sit for six hours out of an eight-hour workday with regular breaks; she can frequently climb

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A).

ramps and stairs; she can occasionally climb ladders; she is precluded from climbing ropes and scaffolds; she is unlimited with respect to balancing, stooping, kneeling, and crouching; she can occasionally crawl; she is unlimited with respect to reaching in all directions, including overhead; she can occasionally perform gross handling, and fine fingering bilaterally; and she has moderate limitations in mental functional capacity with respect to persistence and concentration tasks.

(AR 20 (footnote omitted).)

At **step four**, based on Plaintiff's RFC and the VE's testimony, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 28.) At **step five**, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) Accordingly, the ALJ determined that Plaintiff had not been under a disability from the AOD through the date of the decision. (AR 29.)

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record

3

as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. **DISCUSSION**

Plaintiff raises the following issues for review: (1) whether the ALJ properly considered the combination of mental impairment and pain in the ability to perform work activity; (2) whether the ALJ properly considered the VE's testimony and the Selected Characteristics of Occupations; (3) whether the ALJ properly considered the VE's testimony and the Dictionary of Occupational Titles; and (4) whether the ALJ properly considered the VE's testimony and the economic data published by the Bureau of Labor Statistics. (Joint Submission ("JS") 5.) For the reasons below, the Court affirms.

### A. **The ALJ Did Not Err In Assessing Plaintiff's Combined Mental Impairment And Pain**

Plaintiff contends that the ALJ did not consider the full opinion of Edward Jasinski, Ph.D., the impartial medical expert who testified at the administrative hearing. (*See* JS 8.) Dr. Jasinski reviewed the medical evidence and found that Plaintiff's condition did not meet or equal a listed mental impairment. (*See* AR 40-42.) Dr. Jasinski found that Plaintiff had "moderate limitations with direct

4

concentration, persistence, and pace," explaining that "[t]he moderate limitation is due to the effects of the pain, and the fact that once someone is in the high level of pain it is difficult for them to attend and concentrate." (AR 40.) Dr. Jasinski opined that an individual with Plaintiff's impairments "probably has very little difficulty with simple, repetitive type work. However, the more pain the individual is in, the more detailed and complex the tasks are, the more [Dr. Jasinski] would expect that pain to interfere with their functioning." (AR 41.) The ALJ gave significant weight to Dr. Jasinski's opinion regarding concentration, persistence, and pace due to pain, finding that it "generously considers the claimant's subjective allegations" and is "reasonable and consistent with the record as a whole," including the findings from the psychological consultative evaluation. (AR 26.)

Plaintiff argues that the ALJ erred in failing to address Dr. Jasinski's opinion that increased pain or complexity of tasks would interfere with Plaintiff's functional ability. (*See* JS 6, 8.) Plaintiff notes that the job of rental clerk, which the VE suggested that Plaintiff could perform, is not simple, repetitive work. (JS 8-9.)

The Commissioner contends that Plaintiff incorrectly interprets Dr. Jasinski's opinion as precluding Plaintiff from anything other than the simplest work. (JS 9.) The Court agrees. A finding of moderate limitations with respect to persistence and concentration tasks is distinct from a restriction to only "simple work." *See Jahnsen v. Berryhill*, 265 F. Supp. 3d 992, 1000 (D. Alaska 2017) ("The ALJ had no recommendations from any medical source that plaintiff's moderate limitations as to concentration, persistence, or pace could be translated into a restriction to simple work . . . ."). Although Dr. Jasinski opined that Plaintiff would probably have "very little difficulty with simple, repetitive work," he did not limit Plaintiff to *only* simple and repetitive work. (AR 41.) Additionally, Dr. Jasinski explained that his finding of a moderate impairment "is due to the effects of the pain, and the fact that once someone is in the high level of pain it is difficult for them to attend and concentrate." (AR 40.) Dr. Jasinski therefore considered Plaintiff's pain and

concentration when assessing moderate limitations with respect to concentration, persistence, and pace.

The Court finds that, by adopting the limitations assessed by Dr. Jasinski, the ALJ did not err in assessing Plaintiff's mental impairments and pain, and the limitations are supported by substantial evidence. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (a non-examining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record and is consistent with it).

## B. The ALJ's "Step Five" Findings Are Supported By Substantial Evidence

Plaintiff contends that the ALJ erred in relying on the VE's testimony to find that Plaintiff was capable of performing other work that exists in significant numbers in the economy. (*See* JS 10-18.) The Commissioner contends that the ALJ properly relied on the VE's testimony, and any error was harmless. (*See* JS 12, 15-16, 19-20.)

### 1. Applicable Legal Standard

If a claimant shows that he or she cannot perform past relevant work, it is the Commissioner's burden to establish that, considering the RFC, the claimant can perform other work. *Embrey*, 849 F.2d at 422. To make this showing, the ALJ may rely on the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The ALJ may pose accurate and detailed hypothetical questions to the VE to establish (1) what jobs, if any, the claimant can do, and (2) the availability of those jobs in the national economy. *Id.* at 1101. The VE then translates the ALJ's scenarios into "realistic job market probabilities" by testifying about what kinds of jobs the claimant can still perform and whether there is a sufficient number of those jobs available in the economy. *Id.* (citing *Desrosiers v. Secretary of Health and Human Servs.*, 846 F.2d 573, 578 (9th Cir. 1988) (Pregerson, J., concurring)). The VE's testimony "is valuable only to the extent

that it is supported by medical evidence." *Sample*, 694 F.2d at 644. "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993)).

### 2. Discussion

#### a. The ALJ Committed Harmless Error in Finding that Plaintiff Could Perform the Job of Ticket Taker

At the hearing, the ALJ posed the following hypothetical to the VE:

> [T]his individual can lift 20 pounds on occasional basis, 10 pounds frequently. She can stand and walk six. Sit for six hours. Can frequently do ramps and stairs. Occasional ladders, no ropes or scaffolds. Balancing is not affected. Stooping, bending is not affected. Kneeling not affected. Crouching not affected. Crawling is only occasional. This person, further has unlimited reaching in all directions including overhead, but is limited in both handling gross and fine fingering to bilateral, occasional.

(AR 56.) The VE testified that an individual with those restrictions could not perform Plaintiff's past work. (AR 56.) The VE then testified that other light work would be available, specifically identifying the jobs of ticket taker and counter or rental clerk. (AR 57.) The ALJ then added to the hypothetical:

> [K]eeping it in its entirety, but adding to it that this person may have moderate limitations in mental functional capacity for persistence, concentration, and task . . . .

(AR 58.) The VE stated that this additional limitation would not preclude the jobs of ticket taker or rental clerk. (*Id.*)

"[T]he Social Security Administration relies primarily on the Dictionary of Occupational Titles for 'information about the requirements of work in the national economy," and a VE's testimony generally should be consistent with it. *Massachi*

*v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (quoting Soc. Sec. Reg. 00-4p, 2000 WL 1898704 at *2). When there is a conflict between the Dictionary of Occupational Titles ("DOT") and the VE's testimony, neither automatically prevails over the other. *Id.* The ALJ must determine whether a conflict exists and, if so, determine whether the VE's explanation for the conflict is reasonable and whether there is a basis for relying on the VE rather than the DOT. *Id.*

As Plaintiff notes—and the Commissioner concedes—the VE incorrectly stated that the occupations of ticket taker and rental clerk both had "occasional" reaching, handling, and fingering. (*See* JS 10, 12; AR 58.) According to the DOT, the job of ticket taker requires frequent handling. *See* DICOT 344.667-010, 1991 WL 672863. The ALJ instructed the VE to provide testimony consistent with the DOT and to inform the ALJ if the VE disagreed with the DOT. (AR 55.) But neither the VE nor the ALJ identified the conflict between the VE's testimony that the job of ticket taker had "occasional" handling and the DOT's listing of "frequent" handling. Accordingly, the ALJ's reliance on this testimony was in error. However, as further explained below, the ALJ correctly relied on the VE's testimony to find that Plaintiff was also able to perform the job of rental clerk, and so his finding regarding the job of ticket taker was harmless error. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006) (stating that an ALJ's error is harmless if it is inconsequential to the ultimate nondisability determination).

### b. The ALJ Properly Found that Plaintiff Could Perform the Job of Rental Clerk

Plaintiff contends that she is unable to perform the job of rental clerk, which the VE testified could be performed by someone with Plaintiff's limitations. (JS 11-12, 14-15.) Plaintiff notes that the job of rental clerk requires below average finger and manual dexterity, which are considered to be occupationally significant. (JS 11.) Plaintiff cites the U.S. Department of Labor's Revised Handbook for

Analyzing Jobs in listing specific examples of tasks that require below average dexterity, such as mixing ingredients when baking, patching cement, tying bundles, and turning knobs or switches. (*Id.*) Plaintiff states that she is unable to do simple daily tasks and relies upon her daughter for assistance. (*Id.*) Therefore, Plaintiff argues that the ALJ failed to address Plaintiff's dexterity limitations and "[n]o evidence suggests that [she] has the dexterity to perform the functions required" by the job of rental clerk. (JS 12.)

However, the ALJ did impose a manipulative limitation, finding that Plaintiff could "occasionally perform gross handling, and fine fingering bilaterally." (AR 20.) In making this assessment, the ALJ thoroughly discussed Plaintiff's medical treatment records and gave "significant weight" to the opinion of Brent W. D'Arc, M.D., who examined Plaintiff in connection with her workers' compensation claim. (AR 23-27.) Dr. D'Arc opined that Plaintiff should "[l]imit repetitive activities with the right hand to 30 minutes out of each hour." (AR 285.) The ALJ found that this opinion was consistent with the totality of evidence and "generously considers the claimant's subjective allegations of pain, numbness, and tingling." (AR 26-27.) The ALJ assessed limitations regarding Plaintiff's fine and gross manipulation that were consistent with Dr. D'Arc's opinion.[2] (AR 27.) The ALJ properly relied on Dr. D'Arc's opinion when determining Plaintiff's functional limitations. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("[The examining physician]'s opinion alone constitutes substantial evidence, because it rests on his own independent examination of [the claimant]."); *Contreras v. Colvin*, 2014 WL 5696443, at *5 (E.D. Cal. Nov. 4, 2014) (finding that the ALJ properly relied on a consulting opinion when assessing a claimant's RFC because the opinion was consistent with other independent evidence in the record).

---

[2] "Occasional" performance of a function—as the ALJ assessed with respect to Plaintiff's gross handling and fine fingering bilaterally (AR 20)—is defined as "up to 1/3 of the time." *See* DICOT 295.357-018, 1991 WL 672589 (furniture-rental consultant).

9

Plaintiff also notes that the DOT code for rental clerk (295.357-018) has a "data" code of 3 and a "people" code of 5. (JS 14.) Referencing DOT Appendix B, Plaintiff explains that a "data" code of 3 requires a capacity for compiling, and a "people" code of 5 requires the capacity to persuade. (*Id.*) Plaintiff explains that with her eighth-grade education, "[n]o evidence suggests that [she] has the educational background" required to perform these functions. (JS 15.) Plaintiff also notes that her past relevant work had "data" codes of 6, a capacity for comparing, and "people" codes of 8, a capacity for taking instructions and helping. (*Id.*) Plaintiff contends that this past work "does not give her access to functions of compiling or persuading," and her educational deficit "does not provide a basis for inferring the capacities for compiling or persuading." (*Id.*) Plaintiff concludes that "it is unreasonable to assume and attribute [compiling data and persuading customers] to a person with a limited education." (JS 16.) The Commissioner notes that the job of rental clerk has a reasoning level of 3, which requires a person to "[a]pply commonsense understanding to carry out instructions." (JS 15.) The Commissioner therefore contends that the ALJ properly relied on the VE's testimony to find that Plaintiff could perform the job of rental clerk. (*Id.*)

At the administrative hearing, the ALJ included the RFC's limitation of occasional gross handling and fine fingering bilaterally in the hypothetical that he posed to the VE. (AR 56.) The ALJ also inquired about "moderate limitations in mental functional capacity for persistence, concentration, and task." (AR 58.) The VE testified that someone with those limitations could perform the job of rental clerk. (*Id.*) The ALJ properly relied on the VE's responses, as well as his finding of Plaintiff's limited education (AR 28), to conclude that someone with Plaintiff's limitations could perform the dexterity and mental requirements of a rental clerk. *See Tackett*, 180 F.3d at 1100-01. Furthermore, the ALJ's conclusion regarding Plaintiff's ability to perform the functional requirements of a rental clerk is a rational one, and therefore it must be upheld. *See Ryan*, 528 F.3d at 1198 (an ALJ's

decision should be upheld "[w]here evidence is susceptible to more than one rational interpretation").

### c. The ALJ's Reliance on the VE's Testimony Regarding the Number of Jobs Available Was Proper

Plaintiff contends that substantial evidence does not support the conclusion that the job of furniture rental clerk, which corresponds with the specific DOT code identified by the VE, exists in significant numbers. (*See* JS 17-18.) The Commissioner contends that Plaintiff waived this argument by not raising it at the hearing, or in the alternative, the ALJ reasonably relied on the VE's testimony. (*See* JS 19-20.)

At the administrative hearing, the VE testified that 430,000 rental clerk jobs existed nationally. (AR 57.) While awaiting review by the Appeals Council, Plaintiff submitted additional information regarding the number of jobs available. (*See* JS 277-79.) Plaintiff noted that the Occupational Outlook Handbook ("OOH"), published by the U.S. Department of Labor's Bureau of Labor Statistics, reported 442,100 jobs within the general occupational group of rental clerks. (AR 278; *see* JS 17.) But Plaintiff then noted that industry employment data from the U.S. Census Bureau's County Business Patterns ("CBP") projected fewer than 500 *furniture* rental clerk jobs. (AR 278-79.) Because the VE identified numbers related to the entire occupational group of rental clerks, rather than numbers related to the specific DOT code that he had identified, Plaintiff argues that substantial evidence does not support the ALJ's conclusion. (JS 18.)

Although Plaintiff raised this argument in supplemental briefing before the Appeals Council, her attorney did not cross-examine the VE or challenge the accuracy of his job number estimates at the administrative hearing. (*See* AR 58-61.) Consequently, Plaintiff has waived this argument. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999), *as amended* (June 22, 1999) (declining to consider a claimant's challenge to a VE's job statistics, which was raised for the first time on

appeal, and holding that, "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal"); *see also Shaibi v. Berryhill*, 883 F.3d 1102, 1108-09 (9th Cir. 2017), *as amended* (Feb. 28, 2018) (stating that "*Meanel* therefore remains binding on this court with respect to proceedings before an ALJ").

Moreover, although the Social Security Administration takes administrative notice of the OOH and CBP, an ALJ is not required to *sua sponte* reconcile conflicts between those sources and the VE's opinion, nor must the ALJ inquire into the foundation for the expert's opinion. *Shaibi*, 883 F.3d 1109-10 & n.6. Here, the ALJ reasonably relied on the VE's testimony regarding job numbers. *See Bayliss*, 427 F.3d at 1217 ("An ALJ may take administrative notice of any reliable job information, including information provided by a VE. A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." (citation omitted)).

In sum, the Court finds that the ALJ properly relied on the VE's testimony, and his ultimate step five findings are supported by substantial evidence.

## V.   **CONCLUSION**

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.


DATED:  April 30, 2018                    _____
                                                              /s/
                                         ROZELLA A. OLIVER
                                         UNITED STATES MAGISTRATE JUDGE


**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

12